1

2

3

4             UNITED STATES DISTRICT COURT

5                   EASTERN DISTRICT OF CALIFORNIA

6

7

8

9

ALFONSO MATA,                        )    1:08-cv-00727-LJO-BAK-GSA HC
10                                    )
                Petitioner,           )    FINDINGS AND RECOMMENDATIONS TO
11                                    )    GRANT RESPONDENT'S MOTION TO
                                      )    DISMISS THE PETITION FOR WRIT OF
12                                    )    HABEAS CORPUS   (Doc. 10)
                                      )
13        v.                          )    ORDER DIRECTING OBJECTIONS TO BE
                                      )    FILED WITHIN TWENTY  DAYS
14   TRACEY ST. JULIEN, et al.,       )
                                      )
15              Respondents.          )
     _____)
16

17          Petitioner is a state prisoner proceeding pro se on a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. §  2254.

19          The instant petition was filed on April 22, 2008.  (Doc. 1).[1]  Petitioner is serving a sentence

20   of fifteen years to life plus four years as a result of a 1991 conviction in the Superior Court of the

21   County of Riverside for second degree murder.  (Doc. 1, p. 1).   Petitioner challenges the decision of

22

23          [1]In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is
     deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court
     clerk.  Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988).  The rule is premised on the pro se prisoner's
24   mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be
     adverse to his."  Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see, Houston, 487 U.S. at 271, 108 S.Ct. at 2382.  The
25   Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the
     AEDPA.  Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000), amended May 23, 2001, vacated and remanded on
26   other grounds sub nom. Carey v. Saffold, 536 U.S. 214, 226 (2002).  The date the petition is signed may be considered the
     earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule.  Jenkins v.
27   Johnson, 330 F.3d 1146, 1149 n. 2 (9th cir. 2003).  Accordingly, for Petitioner's state petitions, as well as for the instant
     petition, the Court will consider the date of signing of any petition (or the date of signing of the proof of service if no
28   signature appears on the petition) as the earliest possible filing date and the operative date of filing under the mailbox rule
     for calculating the running of the statute of limitation.  In this instance, that date is April 22, 2008.

1

the Board of Parole Hearings ("BPH") on January 31, 2006, denying Petitioner parole.  (Id., p. 10).

In the petition, Petitioner raises the following two claims: (1) the BPH's decision was not supported

by "some" evidence; and (2) the state courts erred in denying his habeas petitions for failure to state

a prima facie case.  (Doc. 1, p. 4).[2]  On July 8, 2008, the Court ordered Respondent to file a

responsive pleading.  (Doc. 5).  On September 12, 2008, Respondent filed the instant motion to

dismiss, contending that the petition is untimely and that Petitioner's claims are unexhausted.  (Doc.

10).  On November 20, 2008, Petitioner filed an opposition to the motion to dismiss.  (Doc. 13).   On

December 4, 2008, Respondent filed a reply to Petitioner's opposition.  (Doc. 14).   On January 15,

2009, Petitioner filed a response to Respondent's reply.  (Doc. 15).

## DISCUSSION

A.  Procedural Grounds for Motion to Dismiss

Respondent has filed a Motion to Dismiss the petition as being untimely and unexhausted.

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it

"plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not

entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer

if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the

state's procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule

4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874

F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for

state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

Thus, a Respondent can file a Motion to Dismiss after the court orders a response, and the Court

---

[2]For purposes of this motion to dismiss, the Court will consider these two claims to be the same.  This is so because, were the Court to eventually reach the merits of Petitioner's claims, it would review them to determine whether, under the AEDPA, the state court decisions were contrary to or an unreasonable interpretation of clearly established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1), (2). Since such a review would necessarily entail an examination into the validity of the various decisions of the state courts denying Petitioner's state habeas petitions, the second claim in the instant petition, in essence, does not state a separate cause of action from the first, substantive claim that the BPH's decision violated federal law.  In short, in a merits decision, the Court could not address the first claim without also addressing the second.  Accordingly, the Court will assume, for purposes of analyzing the statute of limitations and exhaustion issues raised in the motion to dismiss, that the two claims are alternative ways of stating the same ground for habeas relief.

1    should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

2         In this case, Respondent's Motion to Dismiss is based upon a violation of 28 U.S.C. §

3    2244(d)(1)'s one year limitation period and upon Petitioner's failure to exhaust his state court

4    remedies.  Because Respondent's Motion to Dismiss is similar in procedural standing to a Motion to

5    Dismiss for failure to exhaust state remedies or for state procedural default and because Respondent

6    has not yet filed a formal Answer, the Court will review Respondent's Motion to Dismiss pursuant to

7    its authority under Rule 4.

8         B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

9         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

10   1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas

11   corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063

12   (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118 S.Ct. 586

13   (1997).   The instant petition was filed on April 22,  2008, and thus, it is subject to the provisions of

14   the AEDPA.

15        The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal

16   petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d)

17   reads:

18        (1)  A 1-year period of limitation shall apply to an application for a writ of habeas
     corpus by a person in custody pursuant to the judgment of a State court.  The
19   limitation period shall run from the latest of –

20        (A) the date on which the judgment became final by the conclusion of direct
     review or the expiration of the time for seeking such review;
21
          (B) the date on which the impediment to filing an application created by
22   State action in violation of the Constitution or laws of the United States is removed, if
     the applicant was prevented from filing by such State action;
23
          (C) the date on which the constitutional right asserted was initially recognized by
24   the Supreme Court, if the right has been newly recognized by the Supreme Court and made
     retroactively applicable to cases on collateral review; or
25
          (D) the date on which the factual predicate of the claim or claims presented
26   could have been discovered through the exercise of due diligence.

27        (2) The time during which a properly filed application for State post-conviction or
     other collateral review with respect to the pertinent judgment or claim is pending shall
28   not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, Petitioner challenges the BPH's January 31, 2006 denial of parole.  The AEDPA's one year statute of limitations, as embodied in § 2244(d)(1), applies to habeas petitions challenging an administrative decision in the context of a parole board determination.  Shelby v. Bartlett, 391 F.3d 1061, 1063 (9th Cir. 2004); see Redd v. McGrath, 343 F.3d 1077, 1080 n. 4 (9th Cir. 2003).  Under subsection (d), the limitation period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  In the context of a parole board decision, the factual basis is the parole board's denial of a petitioner's administrative appeal.  Shelby, 391 F.3d at 1066; Redd, 343 F.3d at 1082-1083.  Thus, the statute of limitations begins to run the day following a petitioner's notification of the parole board's decision. Id.  Where the date Petitioner received notice of the parole board's hearing is not part of the record, Shelby rejected the notion that remand for an evidentiary hearing was required to determine the date on which a petitioner found out about the hearing, apparently establishing instead a presumption that an inmate will in fact receive notice on the day the denial is issued, and that date will be used to calculate the statute of limitations unless the petitioner rebuts that presumption:

> "Here, as in Redd, Shelby does not dispute that he received timely notice of the denial of his administrative appeal on July 12, 2001, and he offers no evidence to the contrary.  Therefore, the limitation period began running the next day."

Shelby, 391 F.3d at 1066.

Petitioner and Respondent disagree concerning when the one-year limitation period would commence.  Both parties agree that the BPH's decision denying parole was made on January 31, 2006.  Both parties also agree that the decision indicated that it would become final 120 days later on May 31, 2006.  Both parties also agree that the state regulations allowing inmate administrative appeals of BPH decisions were repealed in 2004.  See Cal. Code Regs, Title 15, §§ 2050-2057 (May 1, 2004).  However, Petitioner maintains that, despite the repeal of his right to administratively challenge BPH's decision, BPH has its own automatic review process during the 120 day interval that precludes a petitioner from filing a habeas petition until the decision becomes final, i.e., on May 31, 2006.  (Doc. 15, p. 2).  Respondent contends that because the administrative appeal process has been repealed, the one-year statute began to run on February 1, 2006 and not on June 1, 2006.  (Doc.

4

14, p. 2).  The Court agrees with Respondent.

In support of his position, Petitioner cites Title 15 Cal. Code Regs., § 2041, which provides in pertinent part as follows:

> (a) General. Board decisions, except decisions made at documentation hearings and decisions which do not require a hearing, are proposed decisions and shall be reviewed prior to their effective date in accordance with the following procedures. Except as provided in subdivision (j), an order for a new hearing vacates a proposed decision. Any other board decision may be reviewed after its effective date as provided in these rules or as specified by the chairperson.

The regulation goes on to address various types of proceedings and the review processes to be used following BPH decisions in those hearings.  However, contrary to Petitioner's contentions, although the clear import of the regulations and the 120-day period before finality is to permit BPH and its personnel to effectuate the regulations by conducting the necessary review, nothing in those regulations either expressly or implicitly precludes a petitioner from pursuing his state habeas remedies.  Petitioner does not cite, and the Court has not found, any controlling case law authority that a state inmate <u>cannot</u> file a state habeas petition during the 120-day period following the original BPH hearing.

Moreover, and more to the point, the running of the AEDPA one-year period does not wait upon such deadlines.  The "triggering" event in subsection 2244(d)(1)(D) is when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," <u>Hasan v. Galaza</u>, 254 F.3d 1150, 1154, fn. 3 (9th Cir. 2001)(*quoting* <u>Owens v. Boyd</u>, 235 F.3d 356, 359 (7th Cir. 2000), <u>not</u> when the factual predicate was actually discovered by Petitioner and <u>not</u> when Petitioner understands the legal theories available to him or the legal significance of the facts that he discovers.  Due diligence does not require "the maximum feasible diligence," but it does require reasonable diligence in the circumstances. <u>Schlueter v. Varner</u>, 384 F.3d 69, 74 (3d Cir. 2004)(*quoting* <u>Moore v. Knight</u>, 368 F.3d 936, 940 (7th Cir. 2004); <u>see</u> <u>Wims v. United States</u>, 225 F.3d 186, 190, fn. 4 (2d Cir. 2000).  It is not necessary for a petitioner to understand the legal significance of the facts; rather, the clock starts when a petitioner understands the facts themselves. <u>Hasan</u>, 254 F.3d at 1154 fn. 3; <u>Owens</u>, 235 F.3d at 359 ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognized their legal

1  significance.")

2  Here, that Petitioner learned on January 31, 2006 of the factual predicate to his claim, i.e.,

3  that the BPH had denied his parole based on the evidence presented at that hearing, is a fact that

4  cannot be disputed.  Even assuming that Petitioner were correct that the California regulations

5  precluded filing a state habeas petition until after finality of May 31, 2006, it was nevertheless

6  Petitioner's obligation under the AEDPA to act promptly in pursuing his state habeas remedies when

7  state law permitted him to do so.  That Petitioner allowed significant time gaps to occur between

8  several stage of the state habeas process is an indication that he did not use his time wisely,

9  something that, unfortunately for Petitioner, is an absolute prerequisite to securing a decision on the

10  merits of a federal petition after the passage of the AEDPA.

11  Accordingly, the Court finds that the one-year statute commenced on February 1, 2006.

12  Petitioner would then have had 365 days, or until January 31, 2007, within which to file his federal

13  petition.  As mentioned, the instant petition was filed on April 22, 2008, some fifteen months after

14  the one-year statute expired.  Thus, unless Petitioner is entitled to either statutory or equitable tolling,

15  the petition is untimely and must be dismissed.

16     C.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

17  Under the AEDPA, the statute of limitations is tolled during the time that a  properly filed

18  application for state post-conviction or other collateral review is pending in state court.  28 U.S.C.

19  § 2244(d)(2).  A properly filed application is one that complies with the applicable laws and rules

20  governing filings, including the form of the application and time limitations.  Artuz v. Bennett, 531

21  U.S. 4, 8, 121 S. Ct. 361 (2000).  An application is pending during the time that 'a California

22  petitioner completes a full round of [state] collateral review," so long as there is no unreasonable

23  delay in the intervals between a lower court decision and the filing of a petition in a higher court.

24  Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized

25  by Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008)(per curium)(internal quotation marks and citations

26  omitted); see Evans v. Chavis,  546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold,

27  536 U.S. 214, 220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006

28  (9th Cir. 1999).

1    Nevertheless, there are circumstances and periods of time when no statutory tolling is

2    allowed.  For example, no statutory tolling is allowed for the period of time between finality of an

3    appeal and the filing of an application for post-conviction or other collateral review in state court,

4    because no state court application is "pending" during that time.  Nino, 183 F.3d at 1006-1007.

5    Similarly, no statutory tolling is allowed for the period between finality of an appeal and the filing of

6    a federal petition.  Id. at 1007.   In addition, the limitation period is not tolled during the time that a

7    federal habeas petition is pending.  Duncan v. Walker, 563 U.S. 167, 181-182, 121 S.Ct. 2120

8    (2001); see also, Fail v. Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16,

9    2002).  Further, a petitioner is not entitled to statutory tolling where the limitation period has already

10   run prior to filing a state habeas petition.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003)

11   ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the

12   state petition was filed."); Jiminez v. White, 276 F. 3d 478, 482 (9th Cir. 2001).  Finally, a petitioner

13   is not entitled to continuous tolling when the petitioner's later petition raises unrelated claims.  See

14   Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006).

15   Along with the motion to dismiss, Respondent has lodged documents with the Court that

16   establish that Petitioner filed the following state habeas petitions: (1) filed in the Superior Court on

17   May 22, 2006 and denied on August 29, 2006 (Doc. 10, Exs. 1 & 2); (2) filed in the California Court

18   of Appeal on December 13, 2006 and denied on January 16, 2007 (Doc. 10, Exs. 3 & 4); and (3)

19   filed in the California Supreme Court on September 13, 2007 and denied on March 19, 2008.  (Doc.

20   10, Ex. 5; Doc. 1, App. 3, p. 2).  The latter petition was denied by the state high court citing People

21   v. Duvall, 9 Cal. 4th 464, 474 (1995).  (Doc. 1, App. 3, p. 2).

22   Based on the discussion above, the one-year period commenced on February 1, 2006 and

23   continued to run until Petitioner filed his first state petition on May 22, 2006, a period of 110 days.

24   Thus, Petitioner would still have had 255 days remaining on his one-year period at that point.

25   Respondent concedes that the running of the statute of limitations was tolled during the

26   pendency of Petitioner's Superior Court petition, during the interval following denial of that petition,

27   and during the pendency of his petition in the Court of Appeal.  (Doc. 14, p. 3).  However,

28   Respondent contends that Petitioner is not entitled to interval tolling following the denial of his

7

1   petition in the Court of Appeal because of the lengthy delay by Petitioner in filing his third petition

2   in the California Supreme Court.  The Court agrees.

3          In reviewing habeas petitions originating from California, the Ninth Circuit formerly

4   employed a rule that where the California courts did not explicitly dismiss for lack of timeliness, the

5   petition was presumed timely and was deemed "pending."  In Evans v. Chavis, 549 U.S.189 (2006),

6   the Supreme Court rejected this approach, requiring instead that the lower federal courts determine

7   whether a state habeas petition was filed within a reasonable period of time.  549 U.S. at 198 ("That

8   is to say, without using a merits determination as an 'absolute bellwether' (as to timeliness), the

9   federal court must decide whether the filing of the request for state court appellate review (in state

10  collateral review proceedings) was made within what California would consider a 'reasonable

11  time.'").  However, "'[w]hen a post-conviction petition is untimely under state law, that [is] the end

12  of the matter for purposes of § 2244(d)(2).'"  Bonner v. Carey, 425 F.3d 1145, 1148 (9th Cir.

13  2005)(quoting Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005)).  See also Carey v. Saffold, 536 U.S.

14  at 226.

15         Therefore, under the analysis mandated by the Supreme Court's decisions in Pace and Evans,

16  this Court must first determine whether the state court denied Petitioner's habeas application(s) as

17  untimely.  If so, that is the end of the matter for purposes of statutory tolling because the petition was

18  then never properly filed and Petitioner would not be entitled to any period of tolling under §

19  2242(d)(2), either for the pendency of the petition itself or for the interval between that petition and

20  the denial of the previous petition.  Bonner, 425 F.3d at 1148-1149.

21         However, if the state court did not expressly deny the habeas petition(s) as untimely, this

22  Court is charged with the duty of independently determining whether Petitioner's request for state

23  court collateral review were filed within what California would consider a "reasonable time."  Evans,

24  546 U.S. at 198.  If so, then the state petition was properly filed and Petitioner is entitled to interval

25  tolling.[3]

26  _____

27      [3]Neither the Ninth Circuit nor the United States Supreme Court has addressed whether a delay in filing may deprive
    a petitioner of statutory tolling for the pendency of an otherwise properly filed state petition itself when the state court does
28  not expressly indicate that the petition was untimely. Presently, Evans only affects entitlement to interval tolling.

1    In Evans, the Supreme Court found that a six-month delay was unreasonable. Id.  The

2    Supreme Court, recognizing that California did not have strict time deadlines for the filing of a

3    habeas petition at the next appellate level, nevertheless indicated that most states provide for a

4    shorter period of 30 to 60 days within which to timely file a petition at the next appellate level.

5    Evans, 546 U.S. at 201.  After Evans, however, it was left to the federal district courts in California

6    to carry out the Supreme Court's mandate of determining, in appropriate cases, whether the

7    petitioners' delays in filing state petitions were reasonable.  Understandably, given the uncertain

8    scope of California's "reasonable time" standard, the cases have not been entirely consistent.

9    However, a consensus appears to be emerging in California that any delay of sixty days or less is per

10   se reasonable, but that any delay "substantially" longer than sixty days is not reasonable.  Compare

11   Culver v. Director of Corrections, 450 F.Supp.2d 1135, 1140-1141 (C.D. Cal. 2006)(delays of 97

12   and 71 days unreasonable); Forrister v. Woodford, 2007 WL 809991, *2-3 (E.D. Cal. 2007)(88 day

13   delay unreasonable); Hunt v. Felker, 2008 WL 364995 (E.D. Cal. 2008)(70 day delay unreasonable);

14   Swain v. Small, 2009 WL 111573 (C.D.Cal. Jan. 12, 2009)(89 day delay unreasonable); Livermore

15   v. Watson, 556 F.Supp. 2d 1112, 1117 (E.D.Cal. 2008)(78 day delay unreasonable; Bridges v.

16   Runnels, 2007 WL 2695177 *2 (E.D.Cal. Sept. 11, 2007)(76 day delay unreasonable), with Reddick

17   v. Felker, 2008 WL 4754812 *3 (E.D.Cal. Oct. 29, 2008)(64 day delay not "substantially" greater

18   than sixty days); Payne v. Davis, 2008 WL 941969 *4 (N.D.Cal. Mar. 31, 2008 (63-day delay "well

19   within the 'reasonable' delay of thirty to sixty days in Evans").  Moreover, even when the delay

20   "significantly" exceeds sixty days, some courts have found the delay reasonable when the subsequent

21   petition is substantially rewritten.  E.g.,  Osumi v. Giurbino, 445 F.Supp 2d 1152, 1158-1159

22   (C.D.Cal. 2006)(3 month delay not unreasonable given lengthy appellate briefs and petitioner's

23   substantial re-writing of habeas petition following denial by superior court); Stowers v. Evans, 2006

24   WL 829140 (E.D.Cal. 2006)(87-day delay not unreasonable because second petition was

25   substantially re-written); Warburton v. Walker, 548 F.Supp.2d 835, 840 (C.D. Cal. 2008)(69-day

26   delay reasonable because petitioner amended petition before filing in Court of Appeal).

27   Here, the delay between the denial of the Court of Appeal's petition on January 16, 2007, and

28   the filing of his third petition in the state supreme court on September 13, 2007, is a period of 240

1  days or almost seven months, a period well outside the range of what district courts, the Ninth

2  Circuit, and the United States Supreme Court have considered reasonable for California inmates.

3  Evans, 546 U.S. at 198.  Thus, Petitioner is not entitled to interval tolling from the denial of his

4  petition in the Court of Appeal on January 16, 2007 until the filing of his petition in the California

5  Supreme Court on September 13, 2007.

6        Respondent again concedes that Petitioner is entitled to statutory tolling during the pendency

7  of his petition in the California Supreme Court.  Thus, the one-year period would have re-

8  commenced the day following the denial of that petition on March 19, 2008, or on March 20, 2008.

9  At that point, Petitioner had already used 110 days before filing his first petition and 240 days

10  between the second and third petitions, for a total of 350 days, leaving only fifteen days remaining in

11  the one-year period.  The one-year period continued to run unabated from March 20, 2007 until it

12  expired fifteen days later on April 4, 2008.  As mentioned, the instant petition was filed on April 22,

13  2008, eighteen days after the one-year period expired.  Thus, unless Petitioner is entitled to equitable

14  tolling, the petition is untimely and should be dismissed.

15      D.  Equitable Tolling

16        The limitation period is subject to equitable tolling when "extraordinary circumstances

17  beyond a prisoner's control make it impossible to file the petition on time."  Shannon v. Newland,

18  410 F. 3d 1083, 1089-1090 (9th Cir. 2005)(internal quotation marks and citations omitted).  "When

19  external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely

20  claim, equitable tolling of the statute of limitations may be appropriate."  Miles v. Prunty, 187 F.3d

21  1104, 1107 (9th Cir. 1999).  "Generally, a litigant seeking equitable tolling bears the burden of

22  establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some

23  extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct.

24  1807 (2005). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest

25  the exceptions swallow the rule."  Miranda v. Castro, 292 F. 3d 1062, 1066 (9th Cir. 2002)(citation

26  omitted).  As a consequence, "equitable tolling is unavailable in most cases."  Miles, 187 F. 3d at

27  1107.

28        Although Petitioner does not expressly contend that he is entitled to equitable tolling, in his

10

opposition to the motion to dismiss he asks the Court to take into consideration the fact the he was

being housed in the Secure Housing Unit ("SHU") during the time he was preparing his petition, and

that his status as a SHU inmate limited his movements and his access to the prison law library.

(Doc. 13, p. 6).  Petitioner argues that his limited access to the prison law library deprived him of the

necessary legal research to pursue his federal claim and also meant that he did not realize that a delay

longer than 60 days in filing a state petition might preclude statutory tolling.  (<u>Id</u>., p. 9).  Petitioner

also describes the limitations of the legal resources available to inmates in his prison law library.

(<u>Id</u>., p. 10).

       Petitioner's claims of ignorance of the law are insufficient to justify equitable tolling.  <u>See</u>,

<u>e.g.</u>, <u>Hughes v. Idaho State Bd. of Corrections</u>, 800 F.2d 905, 909 (9th Cir.1986) (pro se prisoner's

illiteracy and lack of knowledge of law unfortunate but insufficient to establish cause); <u>Fisher v.</u>

<u>Johnson</u>, 174 F.3d 710 (5th Cir. 1999); <u>Rose v. Dole</u>, 945 F.2d 1331, 1335 (6th Cir.1991).  Similarly,

unpredictable lockdowns or library closures do not constitute extraordinary circumstances warranting

equitable tolling in this case.  <u>See</u>, <u>United States v. Van Poyck</u>, 980 F.Supp. 1108, 1111

(C.D.Cal.1997) (inability to secure copies of transcripts from court reporters and lockdowns at prison

lasting several days and allegedly eliminating access to law library were not extraordinary

circumstances and did not equitably toll one-year statute of limitations); <u>Atkins v. Harris</u>, 1999 WL

13719, *2 (N.D.Cal. Jan.7, 1999) ("lockdowns, restricted library access and transfers do not

constitute extraordinary circumstances sufficient to equitably toll the [AEDPA] statute of limitations.

Prisoners familiar with the routine restrictions of prison life must take such matters into account

when calculating when to file a federal [habeas] petition.... Petitioner's alleged lack of legal

sophistication also does not excuse the delay."); <u>Giraldes v. Ramirez-Palmer</u>, 1998 WL 775085, *2

(N. D.Cal.1998) (holding that prison lockdowns do not constitute extraordinary circumstances

warranting equitable tolling).

       The Court views Petitioner's claim of SHU confinement and the limitations on his access to

the prison library that result from SHU confinement in the same light as claims that lockdowns or

law library closures impeded the timely filing of a federal petition.  Petitioner's indigent status, his

limited legal knowledge, and the physical and practical limitations in movement and access within

1    the prison inherent in prison life are no different than the great majority of incarcerated prisoners

2    attempting to file petitions for writ of habeas corpus.  Such circumstances are not "extraordinary"

3    and therefore they do not justify equitable tolling.  If limited resources and legal knowledge, or lack

4    of access to the prison's legal resources were legitimate excuses for not complying with the

5    limitations period, then Congress would have never enacted the AEDPA since most incarcerated

6    prisoners share these difficulties.  Thus, the limitations period will not be equitably tolled.

7           Accordingly, because Petitioner is not entitled to equitable tolling, the petition is untimely by

8    eighteen days and should be dismissed.

9           E.  Exhaustion of State Remedies

10          A petitioner who is in state custody and wishes to collaterally challenge his conviction by a

11   petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The

12   exhaustion doctrine is based on comity to the state court and gives the state court the initial

13   opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501

14   U.S. 722, 731 (1991);  Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158,

15   1163 (9th Cir. 1988).

16          A petitioner can satisfy the exhaustion requirement by providing the highest state court with a

17   full and fair opportunity to consider each claim before presenting it to the federal court.  Duncan v.

18   Henry, 513 U.S. 364, 365 (1995);  Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88

19   F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full

20   and fair opportunity to hear a claim if the petitioner has presented the highest state court with the

21   claim's factual and legal basis.  Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504

22   U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

23          Additionally, the petitioner must have specifically told the state court that he was raising a

24   federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669

25   (9th Cir.2000), amended, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999);

26   Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998).  In Duncan, the United States Supreme Court

27   reiterated the rule as follows:

28          In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion

12

of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further, stating:

Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court *unless he specifically indicated to that court that those claims were based on federal law.* See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the *petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident*," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F.3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

As mentioned above, the California Supreme Court denied Petitioner's state petition citing Duvall.  Under California law, a citation to Duvall indicates that a petitioner has failed to state his claim with sufficient particularity for the state court to examine the merits of the claim, and/or has failed to "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations."  Duvall, 9 Cal.4th at 474.

While conceding that Petitioner included the instant claim in his action before the California Supreme Court,  Respondent contends that Petitioner's state court remedies have not been exhausted because the state supreme court denied the petition on procedural grounds as to the claim raised now in the instant petition, i.e., by the citation to Duvall.  (Doc. 10, pp. 5-6).  Respondent reasons that because the denial by the California Supreme Court was on a procedural defect, not on the merits, Petitioner has not exhausted his state remedies and therefore the petition should be dismissed.  The

1    Court agrees.

2        In <u>Kim v. Villalobos</u>, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth Circuit considered a

3    state petition denied with a citation to <u>In re Swain</u>, 34 Cal.2d 300 (1949).  Like <u>Duvall</u>, a citation to

4    <u>Swain</u> stands for the proposition that a petitioner has failed to state his claim with sufficient

5    particularity.  In <u>Kim</u>, the Ninth Circuit found that the <u>Swain</u> citation indicated that the claims were

6    unexhausted because their pleadings defects, i.e., lack of particularity could be cured in a renewed

7    petition.  <u>Kim</u>, 799 F.2d at 1319.

8        However, in <u>Kim</u>, the Ninth Circuit also stated that it was "incumbent" on the district court,

9    in determining whether the federal standard of "fair presentation" of a claim to the state courts had

10   been met, to independently examine Kim's petition to the California Supreme Court.  <u>Id</u>. at 1320.

11   "The mere recitation of <u>In re Swain</u> does not preclude such review."  <u>Id</u>.  Indeed, the Ninth Circuit

12   has held that where a prisoner proceeding pro se is unable to meet the state rule that his claims be

13   pleaded with particularity, he may be excused from complying with it.  <u>Harmon v. Ryan</u>, 959 F.2d

14   1457, 1462 (9th Cir. 1992)(citing <u>Kim</u>, 799 F.2d at 1321).  "Fair presentation" requires only that the

15   claims be pleaded with as much particularity as is practicable.  <u>Kim</u>, 799 F.2d at 1320.

16       Because <u>Swain</u> and <u>Duvall</u> stand for the same proposition, and applying the principles set

17   forth in <u>Kim</u>, this Court must review Petitioner's habeas petition filed in the California Supreme

18   Court to determine whether that claim was "fairly presented" under federal exhaustion standards.

19       According to the exhibits filed by Respondent, which include the petition filed in the

20   California Supreme Court, Petitioner did not include in that petition a complete transcript of the BPH

21   hearing on January 31, 2006.   Without providing the state high court with a full transcript of the

22   hearing Petitioner is challenging, the record was insufficient to permit the California Supreme Court

23   to address the issue on its merits.  In short, the California Supreme Court was not provided with

24   sufficient evidentiary detail or factual pleadings on which to address the merits of Petitioner's claim

25   that the 2006 BPH decision violated Petitioner's federal constitutional rights.  Accordingly, this

26   Court finds that Petitioner did not "fairly present" the claim to the California Supreme Court.  <u>Kim</u>,

27   799 F.2d at 1319.  Thus, it has not been exhausted.

28       Moreover, it bears emphasis that the California Supreme Court's citation to <u>Duvall</u> did not

14

1   foreclose Petitioner from re-filing his petition in the California Supreme Court along with additional

2   information, documents, or more specific pleadings, e.g., a complete transcript of the 2006 BPH

3   hearing, that would have permitted that court to address the issue on the merits, thereby exhausting

4   Petitioner's claims. Kim, 799 F.2d at 1319.  Petitioner, however, failed to follow this course.

5   Accordingly, the Court concludes that Petitioner did not exhaust his claim in the California Supreme

6   Court, and thus the petition is unexhausted and must be dismissed.

7   _____In his opposition to the motion to dismiss, Petitioner attempts to circumvent Respondent's

8   defense of lack of exhaustion by asserting that he was not challenging the entire BPH proceeding, but

9   only the actual decision denying parole.  (Doc. 13, p. 11).  This novel position conveniently ignores

10  that simple truth that the state courts could not conduct an adequate habeas review by looking at the

11  BPH's decision alone.  Review of administrative decisions cannot be made in a vacuum.  The state

12  courts necessarily would have had to examine the entire hearing transcript to determine if the

13  evidence and reasoning of the BPH denying parole were sound. Petitioner's failure to provide the

14  state high court with a complete transcript precluded such a review on the merits.

15       Petitioner also contends that he was unable to make a copy of the transcript given the

16  limitations imposed by the prison authorities.  (Doc. 13, p. 11).  As Respondent correctly points out,

17  the Court has addressed countless habeas petitions in which the inmates have challenged a denial of

18  parole, and the vast majority have managed to include the requisite transcripts in their state habeas

19  proceedings, thus ensuring that their claims would be fully exhausted.  Petitioner has provided no

20  specific proof that his situation was unique or extraordinary or that the actions of the prison

21  authorities in fact precluded him from providing the California Supreme Court with a full transcript

22  of the January 31, 2006 hearing.

23  _____Finally, Petitioner argues that the state high court erred in denying his petition on procedural

24  grounds. (Doc. 13, p. 12).  However, as Respondent correctly points out, whether the state court

25  correctly applied its own state laws is not a question properly before a federal habeas court.  Estelle

26  v. McGuire, 502 U.S. 62, 67 (1991)("We have stated many times that 'federal habeas corpus relief

27  does not lie for errors of state law.'"), quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v.

28  Taylor, 508 U.S. 333, 348-349 (1993)(O'Connor, J., concurring)("mere error of state law, one that

1   does not rise to the level of a constitutional violation, may not be corrected on federal habeas").

2   Moreover, a determination of state law by a state appellate court is binding in a federal habeas

3   action, <u>Hicks v. Feiock</u>, 485 U.S. 624, 629 (1988), unless the interpretation is an "obvious subterfuge

4   to evade consideration of a federal issue." <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 n. 11 (1975);

5   <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (federal habeas court must respect a state court's

6   application of its own law and must not engage in <i>de novo</i> review).  A federal court has no basis for

7   disputing a state's interpretation of its own law.  <u>Clemons v. Mississippi</u>, 494 U.S. 738, 739-40

8   (1990).  Accordingly, none of the arguments raised in Petitioner's opposition to the motion to

9   dismiss alters the Court's conclusion that the petition's claims are unexhausted.

10                                    **<u>RECOMMENDATION</u>**

11          Accordingly, for all of these reasons, the Court HEREBY RECOMMENDS that

12   Respondent's motion to dismiss (Doc. 10), be GRANTED and that the petition for writ of habeas

13   corpus (Doc. 1), be DISMISSED as untimely and for Petitioner's failure to fully exhaust his state

14   court remedies.

15          This Findings and Recommendation is submitted to the United States District Court Judge

16   assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

17   Local Rules of Practice for the United States District Court, Eastern District of California.  Within

18   twenty (20) days after being served with a copy, any party may file written objections with the court

19   and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

20   Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within

21   ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will

22   then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

23   advised that failure to file objections within the specified time may waive the right to appeal the

24   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

25

26

27

28

1

2

3

4

5          IT IS SO ORDERED.

6      **Dated:**    **September 8, 2009**                    _____/s/ **Gary S. Austin**_____
                                                              UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28